McClendon v. Long Okay. Mr. Yurochek. Good morning. May it please the Court, my name is Mark Yurochek. I am here on behalf of our clients Corey McClendon, Chris Reed and Reggie Holden. I'm joined by my co-counsel Mark Begnaud. In 2018, Sheriff Gary Long initiated a program in Butts County, Georgia to turn one of the most fundamental principles of the Bill of Rights on its head. Acting beyond the already expansive authority vested in him by the Georgia Legislature, he forced an unpopular and therefore legally vulnerable class of citizens to bear his opinion at their homes, on their front lawns. Let me tell you where I am with this. So I have some sympathy for some of your argument insofar as it seems to me the signs for government speech and forcing those signs to be placed in someone's yard would be compelled speech. But one of the problems I'm having is, as I understand it, two of the three plaintiffs here are not homeowners. There's no evidence that they have any property interest in the property that, where the sign was placed. The record's also unclear as to the one who is a homeowner, where the sign actually was placed. Was it placed in the right of way? Was it placed in the yard? And what the legal significance of that is. I've tried to do a little extra research about that very point. But going back to the first part of what's troubling me, if you live in someone else's home, it may well be that the property owner has no problem with the sign being placed there. Maybe, you know, maybe mom and dad don't want trick-or-treaters, right? And maybe the son, who's been, you know, is a convicted sex offender, doesn't like the sign being placed there. But I'm not sure that the son can complain about it, because any compulsion of speech is not his, because it's not his property. Am I missing something? Well, Judge Pryor, you said quite a bit. Yeah. Let me try to address your issues, and I'll start up top with the issue of the property ownership, because there are facts in the record which do clarify some of your questions. Number one, one of the three Petitioners, as I explained, Mr. Holden, is a homeowner. So the issue is live. Number two, the other two do live with their parents, Mr. Reed and Mr. McClendon. The testimony, deposition testimony, no, excuse me, deposition testimony and testimony at the injunction hearing indicated, number one, that the parents of both of the Petitioners who were non-homeowners did object to the placement of those signs. They didn't sue about it. No, they did not sue them. I mean, if there's a compulsion in speech there, it seems to me they're the ones who are being compelled to speak in a way to which they object. It's their property. They have the right to control what's there or not, and they didn't sue about it. The son did, who has no property interest, no right to control whether a sign's placed in the yard or not. Well, as a matter of fact, there was also testimony in the record that both of the non-homeowners had authority to eject people from the home, had authority to determine what was placed at the home. So, Judge, I actually — Where is that testimony? That testimony was in the injunction hearing. Both Mr. McClendon and Mr. — excuse me, Mr. Reed — excuse me, no, Mr. Reed wasn't there. Mr. Holden — Judge, I apologize. I'm tripping up. Mr. McClendon definitively testified that he had the right to eject people from the property. He had the right to make determinations of what was placed on the property at the injunction hearing. Mr. Reed testified to that. I'm sorry, I don't have perfect recall, but if he — But he's doing it on behalf of a parent, right? He's doing it on behalf of parents, but let's also be clear that the signs — But how is it his speech if it's not his property? Well, Judge, I would say that the signs do not single out the homeowner as unsafe. It singles out the home as unsafe. Therefore, everybody in the home is deemed unsafe. Therefore, anybody at the home would have a claim that they were being called unsafe without any kind of due process for that matter. I'm just not — I'm not sure that answers my question. It may be a message about everyone who's there, right? So let's say the sign had been placed across the street and in a lot that's owned by the county. You agree with me? No claim? Off the street? No, Judge, because that gets back to the issue you brought up. Yeah, there would be no claim there, right? It would brand everyone in the home across the street. They would be upset by it, but it wouldn't be on their property. It's on the county's property across the street. Judge, I still think that that gets to the tension that Walker talked about, about government speech versus the First Amendment rights of the Speaker. Now, I take your point about who the Speaker might be in that issue, but I can focus on Mr. Holden and say — It's just hard for me to understand how someone who lives there but is not the owner is the Speaker. I continue to maintain, Judge, that if you're speaking about everybody in the home, then anybody spoken about has a claim. Well, I've got a different question. I've been a little mystified, frankly, by the focus on the right-of-way. For instance, if — let's set aside the fact that there's apparent confusion in the record about what the public right-of-way is or what the status of that edge of the yard is. Let's say that it was clear under Georgia law that five feet into the yard from the street was always the public right-of-way owned in some important sense by the state or the county or the locality, right? Does that mean that the government could come to my yard and put whatever sign it wanted in the first five feet of my property? And if I objected, they would say, well, you know, it's a public right-of-way. Well, that's kind of the thrust of our suit, Your Honor. I don't think the government can come in and say whatever it wants within those five feet and that we're just compelled to accept it. You know, one of the weird things about that is there's actually, as I understand it, a Georgia state law that prohibits the placement of any signed signal or other device in the dedicated right-of-way of any public road. And that's discussed in our brief. I mean, there is a prohibition as far as signage in the right-of-way, and there needs to be specific authorization for the right-of-way to be used for signage. Now, what the respondents have not done here is point to what their specific authorization to put these signs and these rights-of-way are. I guess given all that, and maybe this is really a better question for your opponent, but given all that, I don't understand why so much attention has been dedicated to the right-of-way. Judge, my head's a little congested. Would you just speak up a little bit? Given all of those things, I don't understand why there's been so much attention given to this public right-of-way issue. Well, you'd have to ask the respondents about that. We're not putting the attention on the public right-of-way issue. We think that the violation occurs irrespective of the placement in the right-of-way or 80 yards back in the yard or whatever the respondent's position is. The violation is the forced response to a government statement about the homes. Did they ever make any argument that these signs were particularly allowed because of the sexual offender status of the individuals in the homes? I don't think they're saved by OCGA 42-112. Judge, the only time I've argued to you before was about a sex offender issue when you were in the Supreme Court. They know more about the sex offender registry than I do. And I'm telling you, there's nothing in that statute that specifically authorizes a sheriff to go burden an offender with carrying a message from the Sheriff's Department. The entire registry scheme statute is designed to — it's in bulk. So if they want to publish the list, they publish the whole list at a government installation, a library, a government building. Essentially, the statute says anything that's a government building can be where it's published. But it doesn't say that they can go to the registrant's homes and place signs in front of them, single them out, identify them to their neighbors, and essentially compel them to respond if they want to — if they want to not just be branded. If the statute did specifically allow that, do you think that there would be a viable First Amendment challenge to that allowance? If the law specifically authorized that, I think it would be a different case. But I think you'd once again have issues of compelled speech. Judge Grant, I — had you stayed on the Supreme Court, right, you would have had to run for office a couple years later. I believe Judge Pryor and Judge Hull have had the pleasure of submitting their candidacy to the voters of their respective jurisdictions. So the question becomes, if this sheriff has political opponents in his county and decides on Halloween that he's going to put a sign up saying unsafe because he's determined that your house is unsafe, more because you're a public — an opponent than you are, you know, unsafe, then what are you to do a viable reason to do that? No, he didn't. And is the right to respond — I'm sorry, Judge — It seems to me your argument about Wooley is a really good argument. Just the thing I'm still grappling with is, does it matter whether they own the property or not? I maintain that it does not. I understand that, you know, the issue — If mom and dad had sued — I understand mom and dad didn't sue. — you wouldn't have this problem, right? Maybe this analogy will help you. If Wooley had been driving a rental car, do you think that he would have still been able to put the tape over the license plate? I apologize. I didn't mean to interrupt. Absolutely, it still violates his conscience, and that was the issue. It violated his conscience to carry that — Sure, sure. And I would say if your clients were tenants and paid rent, they might have — I mean, they might have the kind of property interest. But so far as I can tell, they're just living there at the pleasure of their parents and have no property rights. Mr. McClendon's testimony was that he did help with bills and cleaned up around the house, et cetera. So he did — He does chores. I'm sorry? He does chores. Yes, he did chores. It's not — there's no lease that makes that a payment. I'll stipulate there wasn't a lease. There's no evidence of a property interest, is there, of any kind, whether it's ownership, leasehold, rental, anything like that, right? I'm not trying to bend it. I'm trying to think if there is. I don't recall from standing here that there was anything in the record that indicates an actual lease. But, of course, there are plenty of people who live in homes, especially with family, where they earn their keep and don't necessarily — But you've got one plaintiff home to home, right? Yes, for sure. You're positive of that? Mr. Holden, there's no question about that. Okay. So the district court, I don't know what we're going to do, wants to let you add the parents. I mean, maybe add the parents. If you get around, if you prevail here or it's remanded, I don't know what will happen, but you can think about that. We can just represent and we can just deal with a homeowner because that's what we've got here. And I'm going to ask your opponent this question, but as I understand it, everybody who was on the registry got this. There was no effort to single out people who might have a child molestation situation versus somebody who was something else, right? Right. This is a little bit of a unique situation. How about this one person? I'm just trying to see how narrowly drawn this is. How about the one person who has the home? Was he just a — what, did he have child involvement in his sex offense or no child involvement? There was child involvement in his offense. In his one? Yes. How about your other two plaintiffs? Child involvement? Yes, but may I — I know this wasn't narrowly tailored. Well, I'd like to clarify that Mr. McClendon's child involvement was that he had sex with a 15-year-old girl on his 18th birthday, his girlfriend, and was convicted of statutory rape and actually did hard time for that. He went to prison for that. So under the current status of Georgia law, he would have committed a misdemeanor. But under the status of law as it was and with an upset mom, Mr. McClendon went to prison for that. Okay. Okay. You've saved four minutes. Mr. Wehmeyer. Good morning, and may it please the Court, I'm Jason Wehmeyer here on behalf of the defendants. If you don't mind, can I leave to take this off? Thank you. I hear there are a lot of questions for me, and I'm happy to answer them. Well, I'll start. If your argument about the public right-of-way makes a difference, then why couldn't the sheriff of Fulton County come put whatever signs he thought appropriate in my yard? So you said you're mystified by the right-of-way discussion. Here's why it matters. It matters because if it's not your property, you don't have the right to veto or control what happens on that property. Your answer, then, is yes, the sheriff of Fulton County, under your theory, could put whatever signs he wanted to in my yard. If it is not your property. If he puts it in a place that is not your property. The confusion here, I think, in the minds of many homeowners, maybe not you, but in the minds of many homeowners, is that the grass that is in their yard and that they tend and so forth is on their property. It's not always. Sometimes it is. Sometimes it isn't. But it matters what the deeds say. So the distinction here, it would take an involved look into what you actually own. No, I'm just conceding. I'm saying under my hypothetical, everyone, the front five feet of their yard closest to the street actually belongs to the government in some demonstrable sense. I think people would find it very surprising, even if that were true, if the sheriff of their county could put whatever sign they wanted. And I suspect that the sheriff in your county wouldn't try that. And that really what's going on is there's a feeling that you can target this particular set of people. For the sheriff, the sheriff's contention is what's going on is that he's trying to warn the public on a very specific holiday, children, and give them a warning about a specific house that their parents probably don't want them to go to. Is he putting signs all over the place and other types of signs? No. Right, but he could under the theories that you've outlined for us, right? I agree that if it is government speech on government property, then nobody but the government can contest that. Now, if there's another government entity that has trouble with what Sheriff Long is doing, and that government entity owns the property, then there may be some kind of tussle or fuss between them. Let me ask you about the record here. As I understand it, the only thing you've gotten, this goes to your summary judgment motion, and that you got summary judgment as a matter of law, the most you had was a lady or somebody saying, we intended to only put them in the that shows at any house that it was actually in the right-of-way as opposed to the homeowner. That's just the status of the record. Am I correct about that? I have to disagree. There is a declaration from Jeanette Riley. She's a defendant. No, she says, I intended to place them in there. She doesn't say, I have personal knowledge of this house and where the right-of-way begins and ends. She doesn't do any of that. So my recollection is that there are photos, because I went out and helped take photos, and measurements, and so forth. And she says, yes, these signs were placed within the space. These photos? These photos? Well, yeah, I can't say very well. Plaintiff's exhibit 2B and 2C? No, the plaintiff's exhibits were not the ones that I'm talking about. I'm talking about a declaration that Ms. Riley that we filed with our summary judgment motion. Okay. Well, let me then, I think, I'm not sure you've carried your burden to show that they were in the right-of-way. So that's question number one. But my question number two is, if you haven't carried your burden to show you in the right-of-way, okay, you agree it's a violation. You couldn't do it. You can't go into somebody's property. Let's take the one plaintiff who owns it. If it's not in the right-of-way, you agree the sheriff can't go put a sign in somebody's yard, right? He can't violate it. If it's not government property, then I totally agree with that. Okay. So your whole case depends upon whether it was in the right-of-way. Government property, yes, Your Honor. Okay. All right. Now, so we've got that. Let's now go to even if it was in the right-of-way, or ostensibly in the right-of-way, as to whether or not the average person looking at it would have any clue that it's not compelled speech by the person who owns the house that's right there. Okay. Okay. Why is it not compelled speech? How would any reasonable person know that this was not emanating from the home? Sure. So the most crucial reason is that the sign itself is plainly, clearly attributable to Sheriff Long only. It is, it says a public safety message from Sheriff Long. It doesn't say that it's from anybody else. Yeah, but he's compelling. It's government speech, but he's compelling someone who owns that property to communicate his message. I disagree. If that's the only issue, then on the person's property, you might have a trespass claim, but you wouldn't have a First Amendment claim if the only issue is whether it's clear who put up the sign. I mean, someone could say, you can't be on my property, but you couldn't say under your theory, I have a First Amendment right not to have that sign on my property. If it's on my property or your property, then you would have a trespass action, probably. Right. That, conceded. I agree with that. But under your theory, why would there be a First Amendment cause of action so long as it's clear that I'm not the one saying it? If it were on your property or my property, I think there would be, in some sense, at least a stronger First Amendment claim. It would still be a message from Sheriff Long, clearly from Sheriff Long, and not from me. Right. So why is it a First Amendment problem? I don't know that there is a First Amendment problem. It's probably a State law trespass problem. Sounds like a Woolley problem to me. And, frankly, this is one of the things that distinguishes Woolley, because in Woolley, the State is telling the plaintiff, you have to carry the State motto on your vehicle, on your property. Yes. Here, the distinction is, no, it's not their property. It is government property and a solely government message on government property. So the plaintiff does not get a veto over that. That's our case. Not all of our case, but a lot of our case. And I don't think there is any question about government speech here. It is clearly government speech. The plaintiffs haven't really contested that. The question is, for the First Amendment purposes, whether it's compelled speech. We think they fail at least two of the elements of that, and I'm happy to talk about that. Nobody wants me to talk about that. Fair enough. You know, the way, it's your time, Mr. Wehmeyer. Yes, Your Honor. So let me talk about the compelled speech elements. Is any plaintiff being compelled to endorse this message? No, absolutely not. There's no evidence here of compulsion to endorse a message. That, you just admitted, that turns on whether it's your property or not? I think that certainly matters. So for one of these, one of these individuals is the homeowner. He is the homeowner. If the sign was placed in his yard, and it's not clear to me from the record, it's not clear to me, it's not undisputed from the record as best I can tell, that whatever sign was placed in front of his house was placed in the right-of-way. It may well have been on his property. That would be compelled speech, wouldn't it? I disagree with that. Simply because compelled speech requires speech to which somebody disagrees. That's woolly, isn't it? That is. That's woolly. Woolly is a compelled speech case. I know, I know, but that's woolly. You're having to place on your car the message that, of the state motto, and the Supreme Court rules that that's compelled speech. How is that any different? Right. So, if you're the homeowner and it's placed in your yard, how is that any different? So, I agree. There's a very strong analogy to woolly if it is on the plaintiff's property. Okay. It's like, you know, the plaintiff's car, the plaintiff's yard. I agree with that. I can't say anything about that. I can say that the Supreme Court, at least, has articulated certain principles and, you know, established precedents that seem to deviate a bit from woolly. I'm not sure woolly would be decided the same way today. But, regardless, it's controlling law. So, that's why I think— What makes you unsure that woolly would be decided the same way today? There are other license plate cases, like the Texas case, for example, where the Supreme Court says, look, this is clearly government speech. There's no question about that. A license plate is government speech. But the difference is, that wasn't a license plate that was actually being placed on your car. That was whether the state had to approve a Sons of the Confederate Veterans license plate and distribute those. That's right. It concluded that it was government speech. That's where the plaintiff is trying to control the government message. I agree with you. This is government speech. The problem is, this is the woolly problem, where it actually goes on your property. In woolly, it's a car. Here, it's your home. So, let me speak to a procedural issue that I think matters here. And it kind of eliminates an issue about history that is unclear, about where these signs were placed and so forth. There are damages claims for that, about the history, about where they were placed. And if there is an issue of fact, then fine. I think immunities, however, cover that and knock out those claims. I think the primary claim here on appeal, I could be mistaken, but the primary claim as briefed by the plaintiffs is the injunctive relief claim for the future, what happens in the future. And for that, what matters is, what is the sheriff's intention? What is the policy? What do they want to do? What they want to do is post government speech on government property only. It's near a plaintiff's property, but where you're posting government speech on government property, the plaintiff does not get a veto over that. That's what we intend to do in the future if it's appropriate, if it's allowed. And that's what I think is the claim before the court. And am I correct that Butts County had about 60 registered sex offenders and the signs were put in all 60? I mean, there was no distinction between what they did or didn't do. It was just So the criteria is, if you are a registered sex offender who's not in prison, who's out in the community, then a sign gets But there was about 60 in Butts County, and did all 60 get the signs? Roughly, yes, Your Honor. Okay. And there's some kind of designation about sexually dangerous predator. What is that designation as opposed to a sex offender? Is that something in the state law? It is, I believe, in state law. I am no expert on that. Is that a higher It is. I think somebody who has been shown to have, yes, higher risk, more serious crime, that sort of idea. But I am no expert. Please don't take my word for it on that. But none of these people were designated that higher. I think the record tells us nobody was designated a sexually dangerous predator. I'm not saying this is necessarily that important to the legal issue, but I'm just trying to understand what the sheriff did here. None of those three were so designated. Okay. Okay. I have a hypothetical that I would, I think the plaintiffs are going to have a hard time answering, and I'm happy to answer questions about it. But here's the sign. If a deputy sheriff The sign says, no trick or treat at this address, a community safety message from Butts County Sheriff Gary Long. But it also says, shall not be removed by anyone other than the Butts County Sheriff Office, right? Well, there's a flyer that said something along those lines. Yes, Your Honor. Because it's government property. So suppose a deputy sheriff goes out and stands, you know, in the roadway or on the edge of the road, in the grass, right in front of a plaintiff's house. I don't know that there's any prohibition on that. There's no First Amendment problem with that. Do you know whether there is a prohibition against putting signs and government rights away? There's a state law that I mean, can any elected official in Butts County go violate the state law and put a sign in a right-of-way? We contend it's not a violation of state law because he is a county actor and he has implicit permission from the owner of that right-of-way to place the sign. Who's the owner of the right-of-way? It depends on the road. Sometimes it's DOT. Sometimes it's the county. It depends on which particular road. But the sheriff doesn't own the road. No. What about these liability cases saying whether the sheriff really is a state actor or whether he's not a state actor? It depends on what the task is and the function, what he's performing at the time. So, yes, 11th Amendment cases say. I don't know how he's got a right to go put, he didn't write and get permission from the DOT or whoever owns the road, did he? Not to my knowledge. There's no evidence in your right-of-way claim in defending all of this. You didn't put any evidence that you had the power to go put, let's assume it's the right-of-way. There's no evidence in the record that your sheriff had authority, asked for, got it from anybody to put it in the right-of-way, is there? There's no evidence in the record that there is some type of permission like that. Nor is there any law that, as I understand it, Georgia law also provides that the prohibition on signs in the right-of-way can be modified by counties and municipalities, but I've seen no argument that there's any ordinance of a county or municipality that would have permitted this. Well, that's not in the record either. Our contention is, if there's law, you haven't identified any law that says that. That's true, that's true. Our contention is, if that's an issue, that's a matter between whoever the right-of-way owner is, the government entity. I don't know. If I'm the property owner, you come put a sign. I don't know why I can't say, you can't put the sign here. You don't have authority to put signs. It blocks my mailbox. These are right near the mailboxes, like two feet from the mailboxes, right? It was on the level with the mailboxes, too. Yeah, right near the mailboxes. Yes, Your Honor. Okay. I'm out of time. Thank you. Thank you, Mr. Garachek. Thank you. I have a couple of points I'd like to address. With regard to the property ownership issue, and I know, Judge Pryor, this might not get all the way to what you want, but there's certainly instances where a resident, a child of the property owner can assert property rights, e.g., Fourth Amendment searches, on behalf of the property owner. Judge Pryor, I'd also direct you to paragraph 19 of the amended complaint. Yeah, that's a Fourth Amendment kind of context. I'm just not sure how much it may or may not apply. I don't know. I think this is a hard issue, what we do about the property ownership issue as it relates to compelled speech. It does seem to me, at least with respect to one of your clients who is a property owner, because the record is not at all clear that the sign was placed in the right-of-way, that summary judgment against that one of your clients was wrong. Right. With respect to the property ownership issue, Judge, you know, we do have a clean issue with Mr. Holden, and that was actually something that gave the District Court some pause on the takings issue as well. I'd also point out to paragraph 19 in the amendment — So you just need to say if you reverse the summary judgment, would you also put, allow me to amend in the District Court to add the property owner? I want you to ask the Court that. I don't know whether we do it or not. I'm going home to type up the amendment now, Judge Hall. What? I'm going home to type up the amendment. I know, but you need to ask for it. I have no idea whether we do it or not. This is — you've already amended, I don't know, more than once. How many times have you amended? It has been amended once to correct a scrivener's error, so we'd have to have the Court's leave to amend it. Okay. Actually, it's been amended twice. I take that back because one of the respondents was a John Doe initiator. This is a tough issue. We have enough to write about without — I mean, you'd be happy if all three were homeowners. Well, yes. And you'd clear up that problem. I do want to — I do want to clear up one thing, which is that I think the homeowners, yes, I proffer to the Court that the homeowners in each instance would be on board with this suit, but I want to point to the amended complaint, paragraph 19, which supports that, because Mr. Reed's father objected to the signing. He called the sheriff's office and objected, and I don't — I'm not saying that he wasn't a plaintiff, right? I get it. I understood that before. Sure. Other points I'd like to make with the Court, sexually dangerous predator is a distinction made in OCGA 42-112. There are three levels of classification for all sex offenders. So, in other words, there's sex offenders in Georgia, and then there's the subset of Level 1, Level 2, and SDP, sexually dangerous predators. Interestingly, the statute in the Georgia Code calls Level 1 the lowest risk, Level 2 a heightened risk, or a greater risk than Level 1, and an SDP is just considered a risk, and I did have a vagueness challenge in the Georgia Supreme Court about that a couple years ago that ostensibly got punted, so they haven't resolved that, but I promise you at some point I'll get them to. None of these petitioners were SDPs, sexually dangerous predators. That's public record. I'm not sure how relevant that was, but I was just curious that it was a blanket policy. It was just everybody, no matter what. Mr. Waymire himself said at the injunction hearing that it was a blanket policy. I believe those were his words. Okay. In at least one instance, signs were not placed in rights-of-way for the 60 offenders in Butts County because at least one of the offenders lived in an apartment, so they couldn't put in a right-of-way. They put it in his window. So the notion that we're respecting rights-of-way closely is just false. Okay, Mr. Yerchuk, we have your case. We're going to recess for about 10 minutes. Happy holidays. Thank you.